UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE ROSS K. MACNEILL FOUNDATION, an Illinois not for profit corporation, <br><br> Plaintiff, <br><br> v. <br><br> A85 CURE FOUNDATION, INC., an Illinois not for profit corporation, <br> Defendant. | COMPLAINT <br> Civil Action No.: <br> **JURY DEMAND** |

# VERIFIED COMPLAINT

Plaintiff, THE ROSS K. MACNEILL FOUNDATION ("Plaintiff"), an Illinois not for profit corporation, by and through its attorneys, Stahl Cowen Crowley Addis LLC, and complains of Defendant A85 CURE FOUNDATION, INC. ("Defendant"), an Illinois not for profit corporation, states as follows:

## NATURE OF ACTION

1. This is an action for violation of the Lanham Act, 15 U.S.C. §1125(a), and the Illinois Deceptive Trade Practices Act 815 ILCS §510, *et. seq.*, and tortious interference with business relations, arising from conduct engaged in by the Defendant to harm the Plaintiff.

2. By this action, the Plaintiff seeks statutory damages, compensatory damages, punitive damages, attorney's fees and costs, injunctive relief, and all other relief to which they may be entitled and as deemed appropriate by this Court and a jury.

## PARTIES

3. THE ROSS K. MACNEILL FOUNDATION ("the "Foundation") is an Illinois not-for-profit corporation. The Foundation's principal place of business is in Wheaton, Illinois.

4. A85 CURE FOUNDATION, INC. ("A85") is an Illinois not-for-profit corporation. Upon information and belief, A85's principal place of business is in Wheaton, Illinois. The registered agent for A85 is Salvatore Swanton.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of the Plaintiff's federal statutory claims pursuant to 28 U.S.C. § 1391. This Court has supplemental jurisdiction over the subject matter of the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. This Court may exercise personal jurisdiction over the Defendant because it is an Illinois business.

7. Venue in this district is proper pursuant to 28 U.S.C. §1391 because, upon information and belief, the Defendant resides in the district and a substantial part of the events or omission giving rise to the claim occurred in this district.

8. The Plaintiff has been injured by the Defendant's conduct and has suffered damages resulting therefrom.

## FACTUAL BACKGROUND

9. Ross K. MacNeill was a devoted hockey player that was diagnosed at 7 years old with pediatric brain cancer.

10. On May 13, 2013, Ross K. MacNeill died of a malignant brain tumor.

11. On October 16, 2013, the Foundation was incorporated as an Illinois not-for-profit corporation. The Foundation was incorporated in Ross K. MacNeill's honor and to raise funds for pediatric brain cancer research and spread awareness of the disease.

12. In November 2013, the Foundation was registered with the Illinois Attorney General to solicit funds.

13. The Foundation developed a website at the domain address: www.r33m.org (the "Foundation Website"). The Foundation website is designed with the following pages:

    a. Home

    b. Who we are

    c. Funded Research

    d. Shop Orange

    e. Events

    f. Donate

A copy of the Foundation Website design, home page, event page and donation page is attached as **Exhibit A**.

14. The Foundation organized awareness events, golf tournaments, hockey events, jewelry events and other events which mostly take place in or around Wheaton, Illinois.

15. The Foundation's presence is mostly in Wheaton, Illinois but the Foundation's footprint has grown in recent years. The Foundation has received donations from donors in 29 states.

16. The Foundation has years of history and developed its roots in the community of Wheaton, Illinois which supported Ross K. MacNeill and his family while Ross fought pediatric brain cancer.

17. The Foundation utilizes an apparel vendor that had a relationship with Ross K. MacNeill and which vendor donates time to selectively source specific apparel items for the Foundation.

18. The Foundation expended time and resources to develop its advertising, marketing, merchandise, apparel, trademarks and logos for use in its business or raising funds to raise awareness and fund research of pediatric brain cancer.

19. Ross K. MacNeill's family resides in Wheaton, Illinois. Until May 2017, Ross K. MacNeill's sister attended the same high school as the daughter of the founder of A85 (Amanda).

20. A85 unfairly competes for the same events in the small community of Wheaton, Illinois and including events at local golf courses, jewelry events and events at the local high school.[1]

**Registration and Use of the Foundation's Trademarks**

21. The logo used by the Foundation was designed to honor Ross K. MacNeill. The circle logo contains Ross's initials ("R" and "M") and contains Ross's hockey jersey number (#33). A copy of the logo is pasted below ("R33 Logo"):



---

[1] Because the persons referenced are minors and/or under the age of 20, their names and school names are omitted. This information can be submitted to the Court in-camera upon request. However, A85 publishes the full name of Amanda on its website.

22. In 2013, the Foundation applied to register the R33 Logo. In 2015, the R33 Logo was registered with the U.S. Patent and Trade Office as reflected in registration number 4683666. A copy of the R33 Logo Registration is attached as **Exhibit B**.

23. In 2014, the Foundation applied to register another trademark which it uses on its merchandise and apparel – the "TOUGH" trademark. A copy of the TOUGH mark is pasted below (the "TOUGH Mark"):



24. In July 2015, the TOUGH Mark was registered with the US Patent and Trademark Office as registration number 4783019. A copy of the TOUGH Mark registration is attached as **Exhibit C**.

25. The R33 Logo is utilized in all branding, marketing, social media and at all of the Foundation's events.

26. The Foundation utilizes the R33 Logo on vehicle magnets (**Exhibit D**), cookies (**Exhibit E**), advertisement (**Exhibit F**), social media marketing, and merchandise (**Exhibit G**). Examples of the Foundation's use of the R33 Logo are attached as **Group Exhibit H**.

27. The TOUGH Mark is utilized by the Foundation on merchandise including hats, shirts, and clothing, as well as social media marketing, speeches, and other advertisement. Examples of the TOUGH Mark merchandise are attached as **Group Exhibit I**.

28. The Foundation utilizes a banner for advertising which includes the R33 Logo and a photo of children's hands. An example of the Hands Banner is attached as **Exhibit J**.

29. The Foundation identifies 'sponsors' on the Foundation Website including Kendra Scott, a local jewelry designer and Nora Fleming.[2]

30. The Foundation utilizes a logo for golf tournaments which incorporates the R33 Logo (the Foundation's "Golf Logo"). A copy of the Golf Logo is attached as **Exhibit K**. The Golf Logo has been utilized since the summer of 2015, prior to A85's existence.

### A85's Deceptive Trade Practices

31. On February 16, 2016, Amanda (the purported founder of A85 per its website) purchased one of the Foundation's TOUGH t-shirts.

32. On June 26, 2016, A85 was incorporated as an Illinois not-for-profit corporation.

33. Upon information and belief, A85 is not registered with the Illinois Attorney General to solicit donations.

34. Upon information and belief, A85 has not applied nor registered any of its purported marks with Illinois or the USPTO.

35. Upon information and belief, the Defendant purchased the domain name a85cure.org ("Infringing Domain"). Upon information and belief, the "A" in A85 represents the first initial of Amanda – the purported "founder" of A85. A copy of the A85 homepage referencing Amanda as the founder is pasted below.

---

[2] Nora Fleming was removed from A85's website after R33 sent a cease and desist notice to A85.



36. Defendant purchased the Infringing Domain and developed its website to be confusingly similar to the Foundation's Website.

37. The current version of the Foundation's Website underwent a 4 month long redesign and was released on March 8, 2017, Ross K. MacNeill's birthday.

38. On April 26, 2017, only weeks after the redesign of the Foundation's Website was launched, A85 released their strikingly similar website at the Infringing Domain.

39. The Infringing Domain utilizes a letter followed by two numbers – exactly the same format as the Foundation's Website.

40. The Infringing Domain utilizes confusingly similar website design including an exact replica of the Donation page, design headings, and merchandise.

41. Defendant utilizes a circular logo, using a letter and numbers and color which are confusingly similar to the R33 Logo.

42. Defendant's logo is pasted below ("Infringing Logo"):



43. The Infringing Logo is confusingly similar to the Foundation's R33 Logo. The Infringing Logo is a circle, utilizes a letter followed by two numbers in the center of the circle and utilizes the colors red and white.

44. Defendant utilizes the Infringing Logo on exactly the same type of merchandise and materials. For example, A85 utilizes the circular cookie at their events which is confusingly similar to that of the Foundation's (see Exhibit E). A copy of the A85 cookie is attached as **Exhibit L**.

45. Defendant utilizes the Infringing Logo on all of its social media and advertising, as well as in the similar jewelry events, golf events and the high school event.

46. Defendant utilizes Kendra Scott on their website and Facebook account and organized the same event with Kendra Scott, shortly after the Foundation's Kendra Scott event

47. The Infringing Domain and A85 Facebook account include virtually an exact replica of the merchandise, marketing strategies, partners, advertising and website design, photography style and content.

48. A85 utilizes a confusingly similar car magnet to that of the Foundation's (see Exhibit D). A copy of A85's car magnet is attached as **Exhibit M**. The Infringing Logo on a car magnet in the same small community of Wheaton, Illinois has caused actual confusion.

49. A85 utilizes a confusingly similar logo to advertise their golf event to that of the Foundation's (see Exhibit K). A copy of A85's golf logo is attached as **Exhibit N**.

50. A85 utilizes a logo with the word "Rise" in the exact same font as the Foundation's TOUGH Mark (see Group Exhibit I) on merchandise and marketing materials. A copy of A85's Rise hat is attached as **Exhibit O**. The word Rise is not only the same font, but is

positioned exactly the same on the merchandise and in the same size as the Foundation's merchandise. A copy of A85's Rise shirts are attached as **Exhibit P**. The A85 Rise hat is virtually identical to the Foundation's TOUGH hat.

51. A85's use of its RISE merchandise began as soon as a few months after A85 purchased merchandise from the Foundation.

52. A85 also utilizes timing in order to strategically impact the Foundation's events and cause confusion with donors and potential donors. For example, on October 30, 2016, the Foundation announced its "Kendra Scott Gives Back" event for November 4, 2016. On November 20, 2016, A85 announced a "Kendra Scott Gives Back" event for December 8, 2016.

53. A85 also attempted to source apparel from the Foundation's vendor with the exact same apparel number, material, shape as used by the Foundation.

54. Given the close proximity between the Foundation and A85, in the same small community, and the founder of A85 being in the same high school as Ross K. MacNeill's sister, and the almost identical approach, design, merchandise, trade practices, implementation and the deceptive acts described herein, it is clear that these acts were undertaken willfully and wantonly.

55. A85's deceptive acts are designed to unfairly compete and utilize the goodwill and brand developed by the Foundation in honor of Ross K. MacNeill, a young boy that lost his life.

56. Defendant's acts are willful and wanton and rise to the level of conduct for which punitive damages are recoverable by Plaintiff.

57. On August 4, 2017, the Foundation sent a cease and desist letter to A85. A copy of the cease and desist is attached as **Exhibit Q**. The cease and desist asked A85 to take down their website and their Facebook account.

58. During a telephone conference the same day, a female representative of A85 stated loudly that they would not take down A85's website or Facebook account.

59. A85 has not taken down their website or their Facebook account.

60. Upon information and belief, on or about August 10, 2017, A85 had an event and solicited donations at that event utilizing the Infringing Logo and other virtually identical aspects of the Foundation's business model.

61. After the cease and desist was served on Defendant, Defendant asked for time to review and respond. Only days later, Defendant solicited the Foundation's vendor seeking the exact same apparel as was sourced by the vendor for the Foundation. The particular item sought by Defendant had been sourced for the Foundation and released in the summer of 2017.

## CLAIMS FOR RELIEF

## Count I - Federal Trade Dress Infringement
(15 U.S.C. § 1125(a))

62. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 61 of the Complaint as though fully set forth herein.

63. This is a claim for trade dress infringement under 15 U.S.C. § 1125(a).

64. Plaintiff has a distinctive trade dress in the use of the Foundation Website, R33 Logo, TOUGH Mark, Social Media Marketing, merchandise, affiliations with certain sponsors, Golf Logo, business model and other merchandise, marketing strategies, partners, advertising, website design and content ("R33 Trade Dress").

65. As a result of the widespread use and display of the R33 Trade Dress, the trade dress has acquired secondary meaning to potential contributors, sponsors, and supporters for the Foundation, in that potential contributors, sponsors, and supporters have come to associate the

Foundation Website, R33 Logo, TOUGH Mark, Foundation Facebook page, event planning and fundraising techniques, and overall design of the R33 Trade Dress with Plaintiff.

66. Subsequent to Plaintiff's use and adoption of the R33 Trade Dress, Defendants developed, advertised, and solicited contributions for Defendant's Foundation using the Infringing Domain, Infringing Logo, a Facebook page, merchandise, marketing strategies, and advertising techniques that are confusingly similar to the R33 Trade Dress.

67. For example, the Infringing Domain, Infringing Logo, Defendant's Infringing Domain, Infringing Logo, a Facebook page, merchandise, marketing strategies, and advertising techniques have the overall design of the R33 Trade Dress.

68. Defendant's use of these features in connection with the Infringing Domain, Infringing Logo, Facebook page, merchandise, marketing strategies and advertising techniques are likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff.

69. Upon information and belief, Defendant's acts of trade dress infringement were undertaken willfully with full knowledge of the falsity of such designation of origin and false descriptions or representations, and with the express intent to cause confusion, and to mislead and deceive the public.

70. Plaintiff is informed and believes, and thereon alleges, that Defendant has derived and received, and will continue to derive and receive, gains, profits and advantages from Defendant's trade dress infringement in an amount that is not presently known to Plaintiff. By reason of Defendant's actions, constituting trade dress infringement, Plaintiff has been damaged and is entitled to monetary relief in an amount to be determined at trial.

71. Due to Defendant's actions, constituting trade dress infringement, Plaintiff has suffered and continues to suffer great and irreparable injury, for which Plaintiff has no adequate remedy at law.

WHEREFORE, based on the Defendants' violation of the Lanham Act, particularly 15 U.S.C § 1125(a), the Plaintiff seeks:

A. Injunctive relief enjoining Defendant from engaging in conduct which infringes on the R33 Trade Dress, including, but not limited to, the entry of an order which enjoins the Defendant from using the Infringing Domain and Infringing Logo;

B. Actual and compensatory damages resulting from Defendant's actions;

C. An award of three times its actual damages;

D. An award of its attorney's fees and costs reasonably incurred; and,

E. An award of any such other and further relief as this Court may deem just and proper or to which it may be entitled as a matter of law or equity.

## Count II – Illinois Deceptive Trade Practices Act
(815 ILCS §510, et. seq.)

72. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 71 of the Complaint as though fully set forth herein.

73. By use of the Infringing Domain, Infringing Logo and infringement of the R33 Trade Dress, the Defendant intended to deceive the donors, potential donors, and the public in general as to the affiliation, connection or association between Defendant and Plaintiff.

74. By use of the Infringing Domain, Infringing Logo and infringement of the R33 Trade Dress, Defendant intended to utilize the goodwill of the Foundation to solicit contributions to the Defendant's foundation.

75. By use of the Infringing Domain, Infringing Logo and infringement of the R33 Trade Dress, Defendant intended to cause confusion with donors and potential donors to divert contributions from the Foundation to Defendant.

76. Upon information and belief, Defendant received gains, profits and other benefits as a result of its deceptive acts.

77. By engaging in the foregoing conduct, Defendant engaged in a deceptive trade practice.

78. Defendant willfully engaged in the foregoing conduct.

79. Defendant willfully engaged in a deceptive trade practice.

80. Based on Defendant's refusal to take down the Infringing Domain and Facebook page, there is a recognizable threat of future conduct that would deceive the donors, potential donors, sponsors, supporters and the general public with respect to the affiliations, connection or association, or lack thereof, between Plaintiff and Defendant.

81. By engaging in the conduct described in this Count Two, the Defendant violated the Illinois Uniform Deceptive Trade Practices Act.

82. As a direct and proximate result of the Defendant's conduct described in this Count Two and violation of the Illinois Uniform Deceptive Trade Practices Act, the Plaintiff has suffered injuries and damages resulting therefrom that include, but are not limited to, violation of its statutory rights, loss of goodwill, and monetary damages.

WHEREFORE, based on the Defendant's violation of the Illinois Uniform Deceptive Trade Practices Act, the Plaintiff seeks:

A. An award of its compensatory damages, attorney's fees and costs reasonably incurred;

B.  Injunctive relief in the form of order permanently (i) enjoining the Defendant from engaging in marketing strategies and other conduct which infringes on the R33 Trade Dress (ii) enjoining Defendant from using the Infringing Domain and (ii) enjoining the Defendant from using the Infringing Logo; and,

C.  An award of any such other and further relief as this Court may deem just and proper or to which it may be entitled as a matter of law or equity.

### Count III – Tortious Interference with Business Relationships

83. Plaintiff hereby incorporates by reference Paragraphs 1 through 82 and above as though fully set forth herein.

84. Plaintiff held a reasonable expectancy of entering into and continuing valid business relationships with donors, sponsors and prospective donors and sponsors who would find the Foundation through the Internet and social media.

85. Defendant knew of the Plaintiff's expectancy of entering into and continuing valid business relationships with donors, sponsors and prospective donors and sponsors who would find the Foundation through the Internet and social media.

86. Defendant created the its business model, events, the Infringing Domain and Infringing Logo and infringed on the R33 Trade Dress with the reasonable expectation that donors, sponsors, and prospective donors and sponsors of the Foundation would visit the Infringing Domain rather than the Foundation Website.

87. Defendant utilized the Infringing Domain, Infringing Logo, merchandise, marketing strategies, and advertising techniques which infringed on the R33 Trade Dress with the reasonable expectation that donors, sponsors, and prospective donors and sponsors of the

Foundation would be confused and support and make contributions to the Defendant's Foundation instead.

88. Defendant acted with the intent to tortuously interfere with the Plaintiff's prospective business relations by engaging in the foregoing conduct described in Count III.

89. The purchase and creation of the Infringing Domain, the creation of the Infringing Logo, and the conduct which infringes on the R33 Trade Dress constitute an intentional and unjustifiable interference with the Plaintiff's prospective donors and supporters.

90. Defendant's purposeful and intentional interference with the Plaintiff's prospective donors and supporters and prospective business relations prevented the Plaintiff's legitimate expectancies from developing into valid business relationships.

91. As a result of the Defendant's tortious interference with Plaintiff's prospective business relations, the Plaintiff has suffered damages including, but not limited to, loss of prospective revenue from donors and sponsors that otherwise would have contributed to the Foundation and its efforts to raise money to fund research for pediatric brain cancer.

WHEREFORE, based on the Defendant's tortious interference with prospective business relations, the Plaintiff seeks recovery of compensatory and punitive damages and any such other and further relief as this Court may deem just and proper or to which it may be entitled as a matter of law or equity.

## JURY DEMAND

Plaintiff hereby demands a jury on all counts of the Complaint.

Respectfully submitted,

THE ROSS K. MACNEILL FOUNDATION
    Plaintiff,

By: \_\_\_\_/s/ Megan Lopp Mathias_____
        One of its attorneys


Megan Lopp Mathias (ARDC #6280497)
Melissa J. Lettiere (ARDC # 6291738)
Stahl Cowen Crowley Addis LLC
55 West Monroe Street, Suite 1200
Chicago, Illinois 60603
312.641.0060
mmathias@stahlcowen.com
mlettiere@stahlcowen.com

**VERIFICATION**

Under the penalties as provided by law, the undersigned certifies that I have reviewed the allegations contained in the foregoing Verified Complaint, and to the best of my knowledge, the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matter, the undersigned certifies as aforesaid that he verily believes the same to be true.

*[signature]*

Kim MacNeill, on behalf of the
Ross K. MacNeill Foundation